FILED
2017 May-05 PM 02:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**JASPER DIVISION**

| | | |
|---|---|---|
| **MATISHA SWINDLE,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | Civil Action Number **6:16-cv-01269-AKK** |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ) | |
| **Defendant.** | ) | |

# MEMORANDUM OPINION

Matisha Swindle brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that his decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

## I. PROCEDURAL HISTORY

Swindle protectively filed her application for Title II Disability Insurance Benefits on August 1, 2013, alleging a disability onset date of June 15, 2013 due to bipolar disorder, depression, and a pituitary tumor. (R. 145, 161). After the SSA denied her application and request for reconsideration, (*see* R. 74–93), Swindle

requested a hearing before an ALJ, (R. 94). The ALJ subsequently denied Swindle's claim, (R. 10–27), and the Appeals Council denied review, (R. 3–6), rendering the ALJ's opinion the final decision of the Commissioner. Swindle then filed this action pursuant to § 405(g). Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 791 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529

(quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. §§ 404.1520(a)–(f). Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. §§ 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. THE ALJ'S DECISION

In performing the five-step analysis, the ALJ determined that Swindle met the criteria for Step One, because she had not engaged in any substantial gainful activity since her alleged onset date in June 2013. (R. 15). Next, the ALJ acknowledged that Swindle's impairments of affective disorder and anxiety disorder met the requirements of Step Two. (*Id.*). The ALJ then proceeded to the next step and found that Swindle did not satisfy Step Three, because she did "not have an impairment or combination of impairments that meets or medically equals

the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 16) (internal citations omitted).

In this step, the ALJ determined that the "severity of [Swindle's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.09." (*Id.*). In reaching that determination, the ALJ considered the paragraph B criteria, but found that Swindle has only "mild restriction" in activities of daily living, "moderate difficulties" in social functioning and in concentration, persistence, and pace, and only "one to two episodes of decompensation, each of extended duration." (R. 17). The ALJ also considered the paragraph C criteria, but found against Swindle based on the absence of repeated episodes of decompensation, diagnosis of any "residual disease process that would cause decompensation with only minimal increases in mental demands," or history of "requiring a highly supportive living environment" or "display[ing] an inability to function outside of her home." (R. 18).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that, at her date last insured, Swindle had the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels," except that Swindle

> could be expected to understand, remember, and carry out short, simple instructions and tasks; so long as limited to such tasks, [she]

> would be able to maintain attention and concentration for the 2 hour periods necessary for competitive work with customary breaks; [she] should avoid work of a production nature where quick decision-making, rapid changes, and multiple demands are made; contact with the public, coworkers, and supervisors should be occasional or less; [she] could handle infrequent and gradual changes in the workplace but would need assistance with detailed or long-range goal setting; [and she] might miss one to 2 days a month from work due to impairment caused symptoms.

(R. 18).

In light of Swindle's RFC and the testimony of a vocational expert, the ALJ determined that Swindle was unable to perform any past relevant work. (R. 21). The ALJ then proceeded to Step Five where, considering Swindle's age, education, work experience, and RFC, he found that jobs "exist in significant numbers in the national economy that [Swindle] can perform." (R. 22). Accordingly, the ALJ concluded that Swindle "has not been under a disability, as defined in the Social Security Act, from June 15, 2013." (*Id.*).

## V. ANALYSIS

Swindle raises three contentions of error. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

### A. The ALJ's Conclusion that Swindle's Headaches are not a Severe Impairment

Swindle first contends that the ALJ "did not consider [her] headaches at step two" and erred in determining that her headaches were "not severe." Doc. 13 at 10–11. The record belies Swindle's contentions because the ALJ expressly stated

that Swindle did not report any "substantial limitations" due to headaches and had only complained of "infrequent" severe headaches, (R. 15) (citing, *e.g.*, R. 229 ("Historically the more severe headaches associated with confusion are relatively infrequent. She will often have a more daily chronic, what she describes as 'stress headache.'")), and that Swindle's headaches are "well-controlled with medication," (*Id.*) (citing, *e.g.*, R. 339, 448 (headache "doing well with Amitipyline 50 mg QHS"), 457 (headache "[i]mproved with Amitripyline 50 mg QHS")). In any event, however, because the ALJ found in Swindle's favor at Step Two, any error at that step is not reversible. *See Hearn v. Comm'r, SSA*, 619 F. App'x 892, 895 (11th Cir. 2015) ("Any error at step two was harmless because the ALJ found in [the claimant's] favor as to impairment, and the ALJ properly noted that he considered [the claimant's] impairments in later steps.") (citations omitted). Here, the ALJ not only considered Swindle's headaches at Step Two, but also considered Swindle's headaches in combination with her other impairments at Step Three. (*See, e.g.*, R. 17 ("[T]he claimant reported that she does not brush her hair because of headaches.") (citing R. 174)). For these reasons, the court finds no reversible error.

**B. The ALJ's Alleged Failure to Afford Proper Weight to the Opinions of Dr. Alan Blotcky**

Swindle next contends that the ALJ erred in affording "little or no weight" to the opinions of Dr. Alan Blotcky, a clinical psychologist who examined Swindle.

Dr. Blotcky found that Swindle suffers from bipolar disorder and borderline intellectual abilities, (R. 719–20), and exhibits moderate limitations in her abilities to "[r]espond appropriately to coworkers," "[u]se judgment in simple, one or two step, work-related decisions," "[u]se judgment in detailed or complex work-related decisions," "[u]nderstand, remember, and carry out simple, one or two-step instructions," "[u]nderstand, remember, and carry out detailed or complex instructions," and "[m]aintain activities of daily living," and marked limitations in her abilities to "[r]espond appropriately to coworkers," "[r]espond appropriately to customers or other members of the general public," "[d]eal with changes in a routine work setting," "[r]espond to customary work pressures," "[m]aintain attention, concentration or pace for periods of at least two hours," and "[m]aintain social functioning," (R. 723–24).

As an initial matter, the Commissioner correctly notes that Dr. Blotcky's opinion, "as that of a one-time examiner, was not entitled to the deference due to a treating medical source." Doc. 14 at 10. *See Crawford v. Comm'r, Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (ALJ properly concluded that physician's opinion was not entitled to great weight because he only examined claimant only once). Moreover, the ALJ clearly explained his reasons for affording little weight to Dr. Blotcky's opinions, *i.e.*, that although Dr. Blotcky's diagnosis of bipolar disorder is consistent with the treating source evidence, "the extreme limitations

assigned to [Swindle] are contrary to the rest of the record, including consultative and treating source records." (R. 21; *see, e.g.*, R. 303 (appropriate mood/affect, memory, and rapport), 321 ("good" concentration and attention, able to subtract serial 7s from 100), 672 (cooperative, "full" affect, "logical" thought process)). The ALJ also cited Swindle's reported activities — that she watches television, listens to music, takes medication without help or reminders, prepares simple meals, does laundry and other housework "all day every other day" without help or encouragement, leaves her house every day, drives, ventures out alone, shops in stores for groceries and clothes, can handle her own finances, and can follow written instructions, (R. 173–78), — in finding that Dr. Blotcky's opinion was not consistent with the record. Finally, the ALJ found that "Dr. Blotcky's diagnosis of borderline intellectual abilities is inconsistent with [Swindle's] attainment of a GED and education records showing that [Swindle] functions in the low average range of intelligence." (*Id.*). (*See, e.g.*, R. 286 ("average" intelligence estimate, 288 (no "intellectual" deficits noted), 303 ("average" intelligence impression), 672 ("average" intelligence")).

For these reasons, the court finds that the ALJ clearly articulated his reasons for affording little weight to Dr. Blotcky's opinions and that substantial evidence supports the ALJ's determination that Swindle possesses fewer limitations than Dr. Blotcky's report indicates.

### C. The ALJ's Finding that Swindle was Not "Disabled" Despite Evidence that Swindle Would Miss Work More than One Day Per Month

Lastly, Swindle contends that the ALJ erred in "not finding [her] disabled because she would miss work more than one day per month." Doc. 13 at 11. Relevant here, the ALJ determined that Swindle "might miss one to 2 days a month from work due to impairment caused symptoms." (R. 18). The court finds no error, because the VE testified that "[a]nything *in excess of two* [absences] that occurred on a *consistent basis*" would prevent Swindle from maintaining employment. (R. 67) (emphasis added). Therefore, the ALJ's conclusion is consistent with the VE's testimony.

## VI. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's determination that Swindle is not disabled and has the RFC to perform a full range of work at all exertional levels with certain non-exertional restrictions is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. The court will enter a separate order in accordance with this Memorandum Opinion.

**DONE** the 5th day of May, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE